UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JACKIE ELLEN SEAUNIER,

                Plaintiff,

   v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

NO: 1:16-CV-3137-TOR

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 14, 16. This matter was submitted for consideration without oral argument. The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed. For the reasons discussed below, the Court grants Defendant's motion and denies Plaintiff's motion.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

//

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the

ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. *Id.* § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. *Id.* § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. *Id.* § 416.920(a)(4)(ii). If the claimant suffers from "any

impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. *Id.* § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. *Id.* § 416.920(a)(4)(iii). If the impairment is as severe as or more severe than one of the enumerated impairments the Commissioner must find the claimant disabled and award benefits. *Id.* § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, *id.* § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). *Id.* § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not

disabled. *Id.* § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. *Id.* § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. *Id.* § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The burden of proof is on claimant at steps one through four above. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ FINDINGS

On June 12, 2012, Plaintiff filed a Title XVI application for supplemental security income, alleging a disability onset date of May 1, 2009. Tr. 18. Plaintiff's claim was denied initially on October 16, 2012, Tr. 26, and upon reconsideration on

January 3, 2013, Tr. 111.  *See id.*  Plaintiff requested a hearing before an ALJ, which was held on June 20, 2014.  Tr. 33-76.

On February 5, 2015, the ALJ rendered a decision denying Plaintiff's claim. Tr. 18-32.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 12, 2012, the application date.  Tr. 20.  At step two, the ALJ found that Plaintiff had the following severe impairments: osteoarthritis and allied disorder (left knee degenerative joint disease) and substance addiction disorders (methamphetamine abuse in reported remission and cannabis abuse).  *Id*. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  Tr. 23.  The ALJ then concluded that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 416.967(b) except she can lift and or carry 20 pounds occasionally and 10 pounds frequently; she can stand and or walk with normal breaks; for a total of about 4 hours in an 8-hour workday; she can sit with normal breaks for a total of about 6 hours in an 8-hour workday; she is limited to frequent left upper extremity reaching; she is limited to frequent climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; she is capable of unskilled, simple routine work; and she can have occasional contact with the public for work task but the average occurrence being 10 minutes or less.

*Id*.  At step four, the ALJ found that transferability of job skills is not an issue because Plaintiff has no past relevant work.  Tr. 25.  However, the ALJ proceeded to step five and found that, considering Plaintiff's age, education, work experience, and

RFC, there are jobs in significant numbers in the national economy that Plaintiff could perform.  Tr. 26.  On that basis, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act.  *Id*.

On May 10, 2016, the Appeals Council denied Plaintiff's request for review, Tr. 1-3, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income under Title XVI of the Social Security Act. Plaintiff raises three issues for the Court's review:

(1) whether the ALJ erred in finding Plaintiff not credible;

(2) whether the ALJ erred in weighing the medical evidence; and

(3) whether the ALJ erred at step two in rejecting various impairments as non-severe.

ECF No. 14 at 4.  The Court evaluates each issue in turn.

## DISCUSSION

### A.   Adverse Credibility Finding

Plaintiff faults the ALJ for improperly rejecting her subjective complaints. ECF No. 14 at 16-20.  Plaintiff argues that the Commissioner relies on the wrong "substantial evidence" standard, instead of the required "specific, clear and

convincing reasons" standard. Regardless, as explained below, the ALJ's reasons meet the higher "clear and convincing" standard.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to

permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

Here, the ALJ found that Plaintiff reported difficult lifting, bending, standing, and sitting. Tr. 20 (citing Tr. 274-280). Plaintiff also reported that walking was the only thing should could do without affecting her back until she sat down or stopped. *Id.* In September 2002, Plaintiff endorsed left shoulder and low chronic back pain, reporting a 20-month pain and increased symptoms with activity. *Id.* Plaintiff also complained of neck and knee pain, and testified that she has migraine headaches two times a week and difficulty with memory, concentration, understanding, and following instructions. *Id.*

The ALJ provided numerous specific, clear, and convincing reasons for finding Plaintiff not credible. First, the ALJ reasoned that her statements concerning the intensity, persistence, and limiting effects of her symptoms "exceed objective findings." Tr. 24. The ALJ found there are minimal, if any, back, shoulder, neck, and knee-related complaints in the record, and no ongoing reports. *Id.* The ALJ also

reasoned that x-rays were normal and physical exams consistently show full strength in Plaintiff's shoulder and a normal range of motion and gait. *Id.* Physical examinations in September 2012, similarly showed that Plaintiff was "within normal limit range of motion of cervical region, hip joints, knee joints, ankle joints, shoulder joints, elbow joints, finger/joints." Tr. 24 (citing Tr. 392-398). In July 2013, Plaintiff exhibited "full active range of all extremities" and "had a steady normal pace and gait," which is also inconsistent with Plaintiff's reporting. Tr. 24 (citing Tr. 510). During an examination in February 2013, the ALJ found that Plaintiff "had 5/5 grip strength bilaterally . . . [and] 5/5 strength movement of her right shoulder" as well as a "normal neurological exam." Tr. 24 (citing Tr. 549-553). In April 2014, Plaintiff "had grossly normal exam findings of the extremities with no appreciated pain with palpation" as well as "a normal steady gait with normal pace." Tr. 24 (citing Tr. 638). Finally, the ALJ also noted that in June 2014, Plaintiff "was in no acute distress," "had intact neurovascular findings and full normal range of motion of her extremities" and "5/5 strength in all extremities" with a "normal gait." Tr. 24 (citing Tr. 634). Notwithstanding these contradictions, the ALJ considered Plaintiff's left shoulder and low back pain and accommodated both in the RFC. Tr. 21.

Second, as to Plaintiff's claimed mental impairments, while the failure to seek mental health treatment may not be a legitimate basis to reject a claimant's symptom claims, *see Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996), the lack of

credible evidence in the record corroborating the extent of mental health limitations can be, *see Molina*, 674 F.3d at 1113-14. The ALJ opined that Plaintiff's ongoing drug use undermines her credibility with respect to her claimed mental health symptoms and the record shows that her self-reporting is inconsistent. Tr. 25.

To that end, the ALJ explained that in August 2012, Plaintiff admitted using methamphetamine whenever it was available until 6 or 7 months prior and marijuana. *Id.* However, on September 30, 2012, Plaintiff denied any illicit drug use. *Id.* (citing Tr. 395). On October 17, 2012, Plaintiff yielded a positive drug test for cannabinoids and methamphetamine. *Id.* (citing Tr. 404). In March 2013, Plaintiff stated that she last used methamphetamine in February 2013, but had a positive drugs test for cannabinoids, methamphetamine, and opiates months later in July 2013. *Id.* (citing Tr. 437, 487-488).

Here, the record shows that Plaintiff's statements certainly reflect her struggle with substance abuse. However, Plaintiff's last report in April 2014, that she used methamphetamine in the past 30 days and *every other day before that*, and marijuana once in the past 30 days and *daily before that*, starkly contradicts her reports in August 2012, September 2012, and March 2013, that she was not using. Tr. 616.

An ALJ may properly consider evidence of a claimant's substance use in assessing credibility, and inconsistent testimony concerning drug use can contribute to an adverse credibility finding. *Thomas*, 278 F.3d at 959 (the ALJ's finding that

claimant was not a reliable historian regarding drug and alcohol usage supports

negative credibility determination); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir.

1999) (conflicting or inconsistent testimony concerning alcohol or drug use can

contribute to an adverse credibility finding).  Although Plaintiff did not challenge this

basis for the ALJ's adverse credibility determination, the Court also finds it relevant

that the ALJ did not err in relying on Plaintiff's drug use in discounting her

credibility.

Third, the ALJ found that Plaintiff's reported daily living activities

demonstrated greater functioning than she claimed.  Tr. 24.  The ALJ found that

Plaintiff could perform chores until her pain became too much and last did chores the

evening before the hearing. *Id.*  The ALJ also found it relevant that Plaintiff

"rearranged the living room, wall hangings, and moved the bed" because she has bed

bugs and was trying to clean.  *Id.*  The ALJ referred to an August 2012 Adult

Function Report where Plaintiff claimed that she could prepare meals and perform

chores, shopped in stores, cared for her pet puppy, and panhandled.  Tr. 24 (citing Tr.

271-280).  In September 2012, she reported that she could take care of her daily

personal needs, grocery shop, wash dishes, and perform chores.  Tr. 24 (citing Tr.

394).  In April 2013, Plaintiff reported throwing a ball backwards.  Tr. 24 (citing Tr.

703).  In February 2014, Plaintiff reported playing racquetball.  Tr. 24 (citing Tr.

550).

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" *or* when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted) (emphasis added). Contrary to Plaintiff's argument, the ALJ was not required to find that Plaintiff's daily activities are transferrable to a work setting, merely that her claims of a debilitating impairment are contradicted by her daily activities, which is what the ALJ found here. *See id.* Plaintiff's argument that the ALJ made only vague references to her daily living activities is belied by the ALJ's report. The ALJ stated that the "intensity, persistence and limited effect" of Plaintiff's symptoms are not "entirely credible" for various reasons identified at Tr. 24, *including* her daily living activities. Tr. 23-24. Plaintiff argues that the ALJ made no clear connection between her activities and contradictions with her other testimony, but the ALJ was not required to provide that level of specificity. The ALJ discredited Plaintiff's testimony about her impairments because her subjective complaints conflict with her daily activities. *See Molina*, 674 F.3d at 1113; *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). As long as an ALJ's interpretation of a claimant's daily activities is "rational," the Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational

interpretation." *Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court does so here.

Finally, Plaintiff halfheartedly argues that the ALJ erred by inferring a lack of severity of symptoms, and suggests that the ALJ faulted Plaintiff for not seeking regular medical treatment or missing appointments. ECF No. 14 at 18. The record does not support Plaintiff's recitation of the ALJ's findings. Rather, the ALJ evaluated Plaintiff's examination findings and concluded that her complaints exceed objective findings. *See* Tr. 24.

In sum, the Court determines that the ALJ provided numerous specific, clear, and convincing reasons for rejecting Plaintiff's testimony and, therefore, did not err. *See Ghanim*, 763 F.3d at 1163.

## B. Medical Opinion Evidence

Plaintiff faults the ALJ for discounting examining psychologist, Tae-Im Moon, Ph.D.'s opinion in favor of state agency reviewing psychological consultant, Leslie Postovoit, Ph.D. ECF No. 14 at 10 (citing Tr. 25). Plaintiff also contends that the ALJ improperly assigned partial weight to examining physician William Drenguis, M.D.'s opinion. ECF No. 14 at 10 (citing Tr. 24-25). Plaintiff vaguely argues that the ALJ accorded too much weight to state agency reviewing providers. *Id.*

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining

physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

Factors relevant to evaluating any medical opinion "include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and other factors, such as the degree of understanding a physician has of the Administrations' 'disability programs and their evidentiary requirements' and the degree of his or her familiarity with other information in the case record." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical

findings." *Bray*, 554 F.3d at 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

"Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13. That said, the ALJ is not required to recite any magic words to properly reject a medical opinion. *Magallanes*, 881 F.2d at 755 (holding that the Court may draw reasonable inferences when appropriate). "An ALJ can satisfy the 'substantial evidence' requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.*

### 1. Tae-Im Moon, Ph.D., examining psychologist

Plaintiff contends that the ALJ erred in elevating State agency psychological consultant Dr. Postovoit's opinion above the opinion of examining psychologist Tae-Im Moon, Ph.D.'s opinion. Tae-Im Moon, Ph.D. examined Plaintiff during a DSHS mental health evaluation in August 2012. Tr. 21; 102. Dr. Moon opined that Plaintiff was moderate to markedly limited in cognitive and social factors including her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms. *See* Tr. 25 (citing Tr. 381-385; 386-391). The ALJ accorded Dr. Moon's opinion "little weight" because Dr. Moon reviewed no records and, instead, *"relied solely on [Plaintiff's] self-reports, which the record shows are unreliable at times." Id.* (emphasis added). The ALJ further reasoned that Plaintiff was "still abusing drugs at the time of [Dr. Moon's] assessment, which undercuts the reliability of his opinion." *Id.*

Plaintiff argues that the ALJ's finding that Dr. Moon relied solely on Plaintiff's subjective self-reports is unsupported. ECF No. 14 at 11. Rather, Plaintiff contends that her performance on a mental status examination constituted objective evidence sufficient to establish functional limitations and severe depression and ADHD impairments. *Id.* at 12. Plaintiff also disagrees with the ALJ's finding that Dr. Moon's results were mostly normal. Second, Plaintiff argues that the ALJ did not

explicitly explain how her drug use undercuts the reliability of Dr. Moon's opinion. *Id.* at 13.

Here, the ALJ did not err in discounting the opinion of examining physician Dr. Moon because the ALJ gave "specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir.1999) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995)). Specifically, Dr. Moon's opinions were primarily based on check-the-box forms, predicated on Plaintiff's self-reporting, who the ALJ determined was not credible. *See Molina,* 674 F.3d at 1111 ("[T]he ALJ may 'permissibly reject[ ] ... check-off reports that [do] not contain any explanation of the bases of their conclusions.' " (internal citation omitted)); *Morgan,* 169 F.3d at 602 ("A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." (internal quotation marks omitted)).

Next, Plaintiff argues that the ALJ should have explained how her drug use undercuts the reliability of Dr. Moon's opinion, but the ALJ explained that Plaintiff's ongoing use and inconsistent testimony undermines her credibility. Because Dr. Moon's opinion is premised, at least to a large extent, on Plaintiff's claimed mental health symptoms and because Plaintiff testified that she was on drugs at that time, *see* Tr. 616, the ALJ did not err in discounting the reliability of Dr. Moon's opinion.

The Court finds that the ALJ's reasons for discounting Dr. Moon's opinion were specific, legitimate, and supported by substantial evidence. The ALJ provided legally sufficient reasons for limiting Dr. Moon's opinion and, thus, did not err. *See Bray,* 554 F.3d at 1228.

### 2. William Drenguis, M.D., examining physician

Plaintiff argues that the ALJ improperly discounted Dr. Drenguis' opinion as "not completely consistent with objective findings," but adopted many of these same limitations in the RFC. ECF No. 14 at 14 (citing Tr. 23, 25). Plaintiff also argues that because Dr. Drenguis' opinion, limiting Plaintiff to only occasional reaching and only four hours of sitting, conflicts with the RFC determination, it must be rejected explicitly, which the ALJ allegedly failed to do. *Id.* at 14-15. Plaintiff contends that if "the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." ECF No. 17 at 7 (citing SSR 96-8p).

Here, the ALJ discounted the opinion because he reasoned that Dr. Drenguis' findings, which include reaching and sitting limitations, are not completely consistent with objective findings. Tr. 25. The ALJ also stated that images of the lumbar spine and shoulder showed no abnormality and Plaintiff had mostly normal range of motion in her upper and lower extremities, 5/5 strength in all major muscle groups bilaterally, and a normal gait. Tr. 25. Contrary to Plaintiff's argument, the ALJ's

finding does not conflict with SSR 96-8p. That is, the ALJ sufficiently explained why Dr. Drenguis' "opinion was not adopted." *See* SSR 96-8p; Tr. 24-25. He is not required to recite magic words. *See Magallanes*, 881 F.2d at 755. The ALJ set forth a detailed and thorough summary of the facts and clinical evidence conflicting with Dr. Drenguis' opinion, stated his interpretation thereof, and made findings. *See Garrison*, 759 F.3d at 1012. Therefore, the Court also finds that the ALJ provided legally sufficient reasons for limiting Dr. Drenguis' opinion.

### C. Step Two Analysis

Plaintiff next argues that the ALJ erred in finding that her only psychological impairment was her substance addiction disorder. Tr. 20-22. Plaintiff argues that the ALJ erred because he failed to consider specific diagnoses from Tae-Im Moon, Ph.D., relying instead on Dr. Postovoit's statements and, therefore, failed to evaluate her mental health for the entire five step process. ECF No. 14 at 5-7. Plaintiff also disagrees with the ALJ's finding that her headaches are stable and resolve with medication and, again, argues that the ALJ failed to incorporate Dr. Drenguis' sitting restrictions in the RFC.

The step two inquiry is merely a *de minimis* screening device intended to dispose of groundless claims. *Edlund v. Massanari,* 253 F.3d 1152, 1158 (9th Cir. 2001). It does not result in a finding of disability if a particular impairment is found to be "severe" within the meaning of the Commissioner's regulations. *See Hoopai v.*

*Astrue,* 499 F.3d 1071, 1076 (9th Cir. 2007). An impairment, to be considered

severe, must significantly limit an individual's ability to perform basic work

activities. 20 C.F.R. § 416.920(c); SSR 96–3P, 1996 WL 374181; *see Smolen v.*

*Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996). Basic work activities include "abilities

and aptitudes necessary to do most jobs, including, for example, walking, standing,

sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. §

416.921(b). An impairment must be established by medical evidence consisting of

signs, symptoms, and laboratory findings, and "under no circumstances may the

existence of an impairment be established on the basis of symptoms alone." *Ukolov*

*v. Barnhart,* 420 F.3d 1002, 1005 (9th Cir. 2005) (citing SSR 96–4p, 1996 WL

374187 (July 2, 1996)) (defining "symptoms" as an "individual's own perception or

description of the impact of" the impairment). A plaintiff bears the burden of

proving that his or her medically determinable impairment or its symptoms affect his

or her ability to perform basic work activities. *Edlund,* 253 F.3d at 1159–60.

Here, Plaintiff argues that the ALJ failed to consider Dr. Moon's ADHD and

Depressive Disorder diagnoses, and failure to do so renders the ALJ's step two

finding erroneous. ECF No. 14 at 5-6. The Commissioner argues that any error at

step two is harmless because the ALJ resolved that step in Plaintiff's favor. ECF No.

16 at 17; *see also* Tr. 22 (incorporating Plaintiff's "concentration complaints" and

"fully accomodat[ing] them in the [RFC]").

Although the ALJ made no explicit finding as to whether Plaintiff's alleged ADHD and Depressive Disorder did or did not constitute a severe impairment, any error is harmless. To start, Plaintiff prevailed at step 2 because the ALJ found that Plaintiff had severe impairments, allowing Plaintiff to proceed to step 3. Trs. 20-22; *see Burch*, 400 F.3d at 682 (concluding any error ALJ committed at step two was harmless because the step was resolved in the plaintiff's favor). The ALJ expressly discussed the opinions of Drs. Moon and Postovoit, both of whom recognized that both impairments were self-reported by Plaintiff and, as explained above, the ALJ provided legally sufficient reasons for discounting Dr. Moon's opinions and Plaintiff's credibility. Nevertheless, the ALJ explained that he "considered all symptoms and the extent to which the[] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *See also* Tr. 21-22.

In limiting Dr. Moon's opinion, the ALJ reasoned that Dr. Moon did not review any records and relied on Plaintiff's assertion that she was diagnosed with ADHD and had symptoms of depression, while also opining that Plaintiff may not be a reliable historian. Tr. 21, 381-382. The ALJ gave little weight to Dr. Moon's opinion because it occurred at a time when Plaintiff was using drugs and is largely based on Plaintiff's self-reports, which the ALJ found not credible because of Plaintiff's prior drug use, contradictions with objective evidence, and inconsistent

testimony.  Tr. 22.  The ALJ gave "significant weight" to Dr. Postovoit's opinion that Plaintiff's "history suggests [she] likely had problems with mood and anxiety as related to her substance use more than to separate/additional mental health diagnosis" thereby adopting Dr. Postovoit's opinion that Plaintiff has a substance addiction disorder.[1]  Tr. 22; 25.  By agreeing with Dr. Postovoit's opinion and crediting little weight to Dr. Moon's, the ALJ explicitly found that Plaintiff "has no established medically determinable mental health impairment separate from substance addiction disorders" at step two.  *Id.*

Plaintiff argues that the ALJ prematurely concluded that Plaintiff's problems with mood and anxiety related more to her drug use than to separate or additional mental health diagnoses.  ECF No. 17 at 2 (citing *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001)).  Plaintiff relies on case law holding that an ALJ cannot use alcohol abuse to deny disability benefits unless the ALJ first finds the claimant disabled.  *See Bustamante*, 262 F.3d at 955.  However, any error is also harmless because of the legally sufficient reasons the ALJ provided for discrediting Dr.

---

[1]    Plaintiff's argument that the ALJ misinterpreted Dr. Postovoit's statement is unavailing because the ALJ is tasked with resolving any ambiguity.  *See Lingenfelter*, 504 F.3d at 1045 (stating that "it is exclusively within the province of the ALJ to interpret ambiguous evidence").

Moon's opinion. In other words, there was no need for the ALJ to proceed to step five on either diagnosis because, unlike in *Bustamante*, regardless of the impact of Plaintiff's drug use, the ALJ's conclusion that Plaintiff did not suffer from severe mental impairments *is* supported by substantial evidence. *Cf. Bustamante*, 262 F.3d at 955; *see also McLeod v. Astrue*, 640 F.3d 881, 886–88 (9th Cir. 2011) (holding that the burden is on the party attacking the agency's determination to show that prejudice resulted from the error).

Therefore, the Court determines that any omission of ADHD and Depressive Disorder was harmless as the ALJ sufficiently provided a rationale for rejecting this evidence. *Cf. Black v. Astrue*, No. 11-35379, 472 Fed. App'x 491, 492-93 (9th Cir. 2012) (finding that substantial evidence does not support the ALJ's conclusion that an anxiety disorder is not a severe impairment in the absence of any mention of the disorder because "we do not know whether the ALJ's omission was 'inconsequential to the ultimate nondisability determination'") (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)). Given that the ALJ expressly recognized Plaintiff's allegations of depression and ADHD, *see* Tr. 21-22, but accorded significant weight to Dr. Postovoit's opinion, and because Plaintiff ultimately prevailed at step 2, the Court finds any failure on the ALJ's part to explicitly discredit either diagnosis harmless. *See id.*

Plaintiff next argues that the ALJ improperly found that her headaches are stable and resolve with medication. Plaintiff argues that her headaches were not stabilized because even with treatment, it may take several hours to resolve. Plaintiff's argument requires the Court to improperly put the burden at step two on the Commissioner to show that her headache impairment is not significant. However, the regulations and case law squarely place the burden at step two on the claimant to make a prima facie showing that her impairments more than minimally affect her work abilities and have persisted or will continue to persist for a year. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 404.1509; *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The ALJ concluded that Plaintiff failed to meet this burden regarding the severity of her claimed limitations attributed to her headaches and, as such, did not err. Tr. 21.

Finally, Plaintiff relies on 20 C.F.R. § 416.921 for the proposition that it was also error to find Plaintiff's chronic lumbar sprain and chronic left shoulder tendonitis non-severe because they significantly limit her ability to do basic work activities. ECF No. 14 at 9. Based on that reasoning, Plaintiff also rehashes her argument that the ALJ failed to consider Dr. Drenguis' four-hour sitting restriction in the RFC. *Id.* For the reasons articulated above, the Court finds Plaintiff's argument unavailing. The ALJ detailed the facts and evidence conflicting with Dr. Drenguis' opinion and made legally sufficient reasons for limiting Dr. Drenguis' opinion. *See Bray,* 554

F.3d at 1228. Moreover, in making the RFC finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." Tr. 23.

The Court finds that the ALJ relied on substantial evidence to support his finding at step two in concluding that she was not disabled.

**ACCORDINGLY, IT IS ORDERED:**

    1.  Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**.

    2.  Defendant's Motion for Summary Judgment (ECF No. 16) is **GRANTED**.

The District Court Executive is directed to file this Order, enter Judgment accordingly, provide copies to counsel, and **CLOSE** the file.

    **DATED** August 25, 2017.



                  THOMAS O. RICE
        Chief United States District Judge